**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN HELFT, RALPH HELFT,**

|                                    |                              |
|------------------------------------|------------------------------|
| **Plaintiffs,**                    | **1:03-CV-35**               |
|                                    | **(NAM/RFT)**                |

**v.**

**ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY CO., FIRST ALLMERICA LIFE INSURANCE CO.,**

                              **Defendants.**
_____

| **APPEARANCES:**                | **OF COUNSEL:**                  |
|---------------------------------|----------------------------------|
| COUCH WHITE, LLP                | James J. Barriere, Esq.          |
| 540 Broadway                    |                                  |
| P.O. Box 22222                  |                                  |
| Albany, New York 12201-2222     |                                  |
| _For Plaintiffs_                |                                  |
|                                 |                                  |
| WOLLMUTH MAHER & DEUTSCH LLP     | William A. Maher, Esq.           |
| 500 Fifth Avenue                | Frederick R. Kessler, Esq.       |
| New York, New York 10110        |                                  |
| _For Defendants_                |                                  |
|                                 |                                  |
| NIXON PEABODY LLP               | Andrew C. Rose, Esq.             |
| Omni Plaza                      |                                  |
| 30 South Pearl Street           |                                  |
| Albany, New York 12207          |                                  |
| _For Defendants_                |                                  |

**NORMAN A. MORDUE, CHIEF JUDGE:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

       Presently before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure and plaintiffs' motion to amend the complaint pursuant to

Rule 15 of the Federal Rules of Civil Procedure.

## II.    BACKGROUND

On or about November 19, 2002, plaintiffs filed a summons and complaint in New York State Supreme Court, County of Rensselaer alleging that defendants Allmerica Financial Corp., Allmerica Financial Life Insurance and Annuity Co., First Allmerica Life Insurance Co., Allmerica Investments, Inc., Allmerica Investment Management Co., Inc., Allmerica plus Insurance Agency, Inc., (collectively "Allmerica") breached the terms of the variable life insurance policies (the "policies") plaintiffs had purchased from Allmerica by imposing restrictions on plaintiffs' trading activities.

On January 7, 2003, Allmerica filed a Notice of Removal on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.  Plaintiffs are citizens of New York, none of defendants is a citizen of New York, and the amount in controversy exceeds $75,000.  Thus, the Court has jurisdiction over this action.

In a Memorandum-Decision and Order dated September 24, 2004, the Court granted defendants' motion for judgment on the pleadings dismissing plaintiffs' breach of contract claim. The Court also granted plaintiffs' motion to amend the complaint to allege causes of action for modification and waiver, and directed plaintiffs to file an amended complaint.

On October 13, 2004, plaintiffs filed an amended complaint alleging two causes of action for modification and waiver.  Defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs oppose defendants' motion and cross-move to file a second amended complaint pursuant to Fed. R. Civ. P. 15 to cure the deficiencies identified in defendants' motion to dismiss and to advance a third cause of action for specific performance.

Defendants oppose plaintiffs' cross-motion.

**III.      The Amended Complaint**

In the amended complaint, plaintiffs allege as follows:

THE FIRST THREE POLICIES

In or about 1992, an agent of Defendants, Thomas Ward, contacted Plaintiff John Helft, and informed Mr. Helft about a type of life insurance policy called Flexible Premium Variable Life Insurance (or "FPVLI") that could be used as an investment vehicle and would allow him to buy and sell large interests in mutual funds inside a life insurance policy.

Plaintiff John Helft expressed an interest in purchasing a FPVLI life insurance policy as an investment vehicle, with the stipulation that his investment strategy required unfettered discretion to buy and sell large interests in mutual funds very quickly.

Mr. Ward assured Mr. Helft that a FPVLI policy would allow him to execute his investment strategy inside a life insurance policy.

In the FPVLI, a substantial portion of the cash value may be allocated to an account called the variable account held by Allmerica.

The variable account is divided into sub-accounts, each of which is available for allocation of policy cash value.

Each of these sub-accounts invests solely in shares of a corresponding series of mutual funds, which have designated, distinct investment objectives.

A policy cash value allocated to the variable account will depend on the investment performance of the underlying fund.

The policy permits its owner to manage his investments by transferring assets back and forth as often as daily among the various sub-accounts, depending on the policyholder's assessment of needs, market conditions, and other factors.

Plaintiff John Helft asked Mr. Ward to check with Defendants to be sure that they understood the speed and volume of his trades and the amounts of money that would ultimately be involved if he purchased a FPVLI policy.

Mr. Ward then checked with one or more Defendants, and after a period of several days verified to Plaintiff John Helft that Defendants would not restrict the frequency, timing, or amounts of Mr. Helft's transfers between the policy's sub-accounts of the variable

3

account on a rapid and large basis consistent with his investment strategy.

Mr. Ward provided Plaintiff John Helft with a standard form policy prepared exclusively by Defendants.

The policy form contained a provision entitled "Transfers of Value," which stated:

> You may transfer amounts between the General Account and the sub-accounts of the Variable Account or among the sub-accounts of the Variable Account by sending the Company a written request. Once during the first 24 months after the date of issue and during the first 24 months after an increase in the face amount, you may transfer, without charge, all or part of the policy value in the Variable Account to the General Account of this policy. If you do so, future payments will be allocated to the General Account unless you specify otherwise. All other transfers are subject to the following rules and will be permitted only with the consent of the Company.

> If the Company consents to a transfer, the minimum and maximum amounts that may be transferred shall be determined by the Company according to its then current rules. In addition, the Company reserves the right to limit the number of transfers which may be made in each policy year and to establish other reasonable rules restricting transfers.

> If a transfer would reduce the policy value in the sub-account from which the transfer is to be made to less than the then current minimum balance required by the Company for such sub-account, the Company reserves the right to include such remaining value in the amount transferred.

> There will be no charge for the first six transfers per policy year. A transfer charge of up to $25 will be imposed on each additional transfer and deducted from the amount that is transferred. Transfers as a result of a policy loan or repayment thereof are not subject to these rule.

In reliance on Mr. Ward's representations and the plain language of the policy, on July 27, 1992, Plaintiff John Helft purchased FPVLI Policy V550904, a copy of which is attached hereto as Exhibit "A." The policy contained the "transfers of value" provision quoted above.

Again, in reliance on Mr. Ward's representations and the plain language of the policy, on March 4, 1993, Plaintiff John Helft purchased FPVLI Policy V564447, a copy of which is attached hereto as Exhibit "B."

The policy contained a "transfers of value" provision stating in its first sentence that the contract owner was authorized to "transfer amounts between the General Account and

the sub-accounts of the Variable Account or among the sub-accounts of the Variable Account . . . ."

Such provision confirmed Defendants' representations that Plaintiff John Helft was permitted to make transfers in the sub-accounts of the variable account without limitation.

Again, in reliance on Mr. Ward's representations and the plain language of the policy, on December 2, 1995, Plaintiff John Helft purchased FPVLI Policy Y611503, a copy of which is attached hereto as Exhibit "C."

The policy contained a "transfers of value" provision stating in its first sentence that the contract owner was authorized to "transfer amounts between the General Account and the sub-accounts of the Variable Account or among the sub-accounts of the Variable Account . . . ."

Such provision confirmed Defendants' representations that Plaintiff John Helft was permitted to make transfers in the variable and sub-accounts without limitation.

THE PARTIES' PERFORMANCE, 1995-1997

The ability to transfer investments among sub-accounts of the variable account without limitation is a key feature of the contracts, and at all relevant times, including before they issued the policies, Defendants knew this to be a key factor for Plaintiffs.

As part of their investment strategy, Plaintiffs have frequently exercised the right of transfer among sub-accounts, sometimes on a daily basis, depending on their evaluation of how to maximize their investment prudently.

From 1995-1997, Defendants honored Plaintiffs' transfer requests without limitation as to frequency, timing, or amount, even though sub-account transfers were made frequently, sometimes as often as daily.

Typically, to make transfers, Plaintiffs would telephone Defendants' customer service center, a toll-free telephone number.

Plaintiffs would tell the customer service representatives the transfers that they wanted to make, and the representatives would make them.

. . .

THE SECOND THREE POLICIES

After Defendants and Plaintiff John Helft had a course of dealing for approximately two years, during which time Plaintiff John Helft engaged in transfers in the variable and sub-accounts that were unrestricted by Defendants as to frequency, timing, and volume, in or about 1997, Plaintiff John Helft and his brother, Plaintiff Ralph Helft, met with two of Defendants' agents, Thomas Ward and Paul Brock, at the agents' office in North Bennington, Vermont. That meeting was in addition to many meetings that took place at Plaintiff Ralph Helft's residence with Thomas Ward and/or Paul Brock.

The purpose of the meeting was to discuss the Plaintiffs' possible purchase of additional life insurance policies from Defendants.

As part of their pre-purchase investigation, Plaintiffs questioned Mr. Ward regarding, among other things, whether Plaintiffs would be able to continue to make 7 transfers of significantly larger amounts among the sub-accounts without limitation as to the frequency, timing, or substantially larger amounts of transfers.

It was absolutely necessary to Plaintiffs that their transfers be unrestricted because: they contemplated purchasing substantial policies that they anticipated would grow significantly in value; purchasing the policies would require significant expenditures at the policies' inception; and Plaintiffs would incur substantial losses if they subsequently were to cancel the policies.

Mr. Ward assured Plaintiffs that he had confirmed with Defendants that Defendants would not restrict the frequency, timing, or substantially larger amounts of transfers.

Defendants understood that the ability by Plaintiffs to make unlimited sub-account transfers was essential to Plaintiffs in carrying out their purposes in obtaining the policies.

Had Defendants not committed to allow unlimited sub-account transfers, Plaintiffs would not have purchased the policies.

Defendants understood, at the time they sold the policies, that Plaintiffs would not have purchased the policies had Defendants not committed to allow unlimited sub-account transfers.

The acknowledgment by Defendants that they would allow unlimited sub-account transfers was intended by Defendants and Plaintiffs to become, and did become, part of the contractual agreement between the parties, superceding any provisions in the policy form to the contrary.

The acknowledgment by Defendants that Defendants will allow unlimited sub-account transfers constituted a modification and/or waiver of any contrary rights of Defendants.

6

In reliance on the representations by Thomas Ward, and in reliance on the parties' previous course of dealing, on April 8, 1998, John Helft purchased FPVLI Policy Y632567-16, a copy of which is attached hereto as Exhibit "D."

The policy contained a "transfers of value" provision stating in its first sentence that the contract owner was authorized to "transfer amounts between the General Account and the sub-accounts of the Variable Account or among the sub-accounts of the Variable Account . . . ."

Such provision confirmed Defendants' representations that John Helft was permitted to make transfers in the variable and sub-accounts without limitation.

In reliance on the representations by Thomas Ward, and in reliance on the parties' previous course of dealing, on or about April 8, 1998, Ralph Helft purchased FPVLI Policy Y632567-00, a copy of which is attached hereto as Exhibit "E."

The policy contained a "transfers of value" provision stating in its first sentence that the contract owner was authorized to "transfer amounts between the General Account and the sub-accounts of the Variable Account or among the sub-accounts of the Variable Account . . . ."

Such provision confirmed Defendants' representations that Ralph Helft was permitted to make transfers in the variable and sub-accounts without limitation.

In reliance on the representations by Thomas Ward, and in reliance on the parties' previous course of dealing, on March 3, 1999, Ralph Helft purchased FPVLI Policy Y635928, a copy of which is attached hereto as Exhibit "F."

The policy contained a "transfers of value" provision stating in its first sentence that the contract owner was authorized to "transfer amounts between the General Account and the sub-accounts of the Variable Account or among the sub-accounts of the Variable Account . . . ."

Such provision confirmed Defendants' representations that Ralph Helft was permitted to make transfers in the variable and sub-accounts without limitation.

Plaintiffs periodically received notices and correspondence relating to their policies on stationery that bore the names of all of the Defendants except Allmerica Plus Insurance Agency, Inc.

THE PARTIES' PERFORMANCE, 1998-2001

From 1998-2001, Defendants continued to honor Plaintiffs' transfer requests without limitation as to frequency, timing, or amount, even though such transfers were made

frequently, sometimes as often as daily.

. . .

At no time during this period did Defendants attempt to restrain, restrict or in any way limit Plaintiffs' transfers, except for minor limitations to which Plaintiffs agreed to account for Defendants' faulty computer system and Defendants' employees' mistakes made on transfers among the sub-accounts of the variable account.

Nor did Defendants indicate that they had any intention to limit the Helfts' transfers in the future.

In fact, in 2000, Defendants actively marketed their insurance products with the assistance of Ralph Helft to solicit new customers based on Plaintiffs' demonstrated success with Defendant's unrestricted transfer procedures.

Specifically, Defendants, through their agents, Thomas Ward and Paul Brock, held seminars on or about February 17, 2000, and on or about June 7, 2000, to sell policies to the public similar to the policies they sold to Plaintiffs.

On both occasions, Mr. Ward rented banquet rooms at the Cambridge Hotel in Cambridge, New York, and invited Ralph Helft to attend.

At the seminars, Thomas Ward and Paul Brock told investors that they should model their investment procedures in their policies on Ralph Helft's demonstrated success with unrestricted transfers.

DEFENDANTS REFUSE TO HONOR
PLAINTIFFS' TRANSFER REQUESTS

After a course of performance of approximately six years, during which time Plaintiffs made hundreds of unrestricted transfers in the variable and sub-accounts, in 2001, Defendants began imposing restrictions on Plaintiffs' transfers, in violation of the contracts.

As of approximately April 1, 2002, Defendants have imposed severe restrictions on Plaintiffs' transfers in the variable and sub-accounts, in violation of the terms of the contracts.

Until Defendants imposed the transfer restrictions, Defendants had given Plaintiffs repeated assurances that their rights to make transfers among policy funds would not and could not be restricted.

Plaintiffs entered into the contracts because of certain of their unique characteristics.

Chief among these is the right to make daily asset transfers, if desired, among the sub-accounts.

Defendants failed to fulfill their obligations as expressed in repeated conversations and communications both before and after the purchases of the policies.

Defendants also failed to fulfill their obligations as implied in the parties' course of performance over six years.

Defendants modified and/or waived any provisions in the contract inconsistent with Plaintiffs' rights to make unlimited daily transfers among the sub-accounts.

The unilateral restrictions imposed by Defendants in 2001 and 2002 restricted Plaintiffs' transfers to such an extent that their proven investment strategy was undermined, and, effectively, prevented.

Moreover, the capital that Plaintiffs had available for trading activities has now been tied up in the Allmerica policies.

At all relevant times, Plaintiffs have paid in full and on time their premiums due under the policies and have duly performed all of their obligations under the policies.

Dkt. no. 28 (paragraph numbers omitted).  Plaintiffs have attached 14 exhibits to the amended complaint.  Based on the above, plaintiffs advance two causes of action: modification; and waiver, and seek damages in excess of $9,850,000.

## IV.    DISCUSSION

### A.    Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)

Defendants move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In addressing defendants' motion to dismiss, the Court accepts as true all of the factual allegations in the complaint and draw inferences from those allegations in the light most favorable to the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997).  Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994).  As noted, plaintiffs have attached a number of exhibits to the amended complaint.  The court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Both parties have also submitted exhibits in connection with the instant motion.  Because none of these exhibits are referenced in or attached to the amended complaint, the Court disregards them and has not considered them in addressing the instant motion.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  As the parties have not conducted discovery, the Court declines to convert defendants' motion into one for summary judgment.

This action stems from defendants' restriction of plaintiffs' rights to direct Allmerica to place trades within the policies' sub-accounts after years of successful trading.  The Court previously dismissed plaintiffs' breach of contract claims on the basis that the life insurance policies unambiguously authorized defendants to restrict the amounts of their transfers and to decline to consent to a transfer request.  The Court granted plaintiffs' motion to amend the complaint to add causes of action based on the alleged modification and waiver of certain provisions of the policies.  Plaintiffs did so, and defendants now move to dismiss those claims on a number of grounds, including failure to allege that any modification or waiver was in writing as required by N.Y. Ins. Law § 3204, and the Statute of Frauds, N.Y. Gen. Oblig. Law § 5-701.[1]  *See*

---

[1]

The Court previously found, based on the parties' implied consent, that New York law controls in this diversity case.  Dkt. no. 27, p. 6; *see also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (holding that it is well settled that "such 'implied consent . . . is sufficient to establish choice of law.'") (quoting *Terhran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).

*e.g. Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.").  Defendants raise these arguments for the first time in the present motion.

Section 3204 of the New York Insurance Law provides in relevant part:

(a)(1) Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued.

(2) No application for the issuance of any such policy or contract shall be admissible in evidence unless a true copy was attached to such policy or contract when issued.

(3) Such policy or contract cannot be *modified*, nor can any rights or requirements be *waived*, *except in a writing* signed by a person specified by the insurer in such policy or contract.

N.Y. Ins. Law § 3204(a).  The New York Statute of Frauds provides in relevant part:

a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime . . . .

N.Y. Gen. Oblig. Law §5-701(a)(1); *see also Aiello v. Manufacturers Life Ins. Co. of N.Y.*, 298 A.D.2d 662, 662 (3d Dep't 2002) (holding that any modification to the annuity contract "is required to be made by a signed writing.").  The amended complaint does not specifically allege that the purported modification and waiver regarding the policies were in writing, and refers to many oral representations by defendants' agents.  Moreover, plaintiffs do not dispute defendants' argument.  Plaintiffs instead claim that defendants arguments are premature because no discovery has taken place yet, and that there are in any event two written modification agreements drafted

11

by defendants' Vice President.  Plaintiffs have submitted the "modification agreements" in opposition to defendants' motion to dismiss.  Even assuming the Court could consider these documents, *see Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir. 2001) (finding that in the "contracts situation" before the court, the district court properly relied on the documents containing the agreements at issue even though the plaintiff did not mention them in her pleadings since the documents were "integral to the complaint" and the plaintiff had notice of them), the amended complaint specifically alleges that the purported modification and waiver with regard to the policies at issue were the result of *oral representations* and their lengthy practice of trading without restriction.  Accordingly, defendants' motion to dismiss is granted.  Consequently, the Court need not reach defendants' remaining arguments.

### B.   Motion to Amend the Complaint - Fed. R. Civ. P. 15(a)

"Although leave to amend a pleading under the Federal Rules of Civil Procedure 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), such leave will be denied when an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

The proposed second amended complaint advances three causes of action: (1) modification of the policies based on two written agreements between the parties; (2) waiver of any restrictions on their trading practices based on two written agreements between the parties; and (3) specific performance.  Plaintiffs have attached the two "written modification agreements"

to the proposed amended complaint.

Defendants oppose plaintiffs' motion on a number of grounds, including bad faith, undue delay, prejudice, and futility but have failed to come forth with specific evidence, as is their burden, demonstrating that plaintiffs are acting in bad faith, have unduly delayed these proceedings, or that they would be prejudiced by the filing of a second amended complaint. Accordingly, the Court turns to defendants' futility arguments.

The first "written modification agreement", dated January 15, 1998, states:

Allmerica requests your signatures and those of your Allmerica Financial representatives acknowledging your understanding of the provisions regarding the allocation of funds within the Variable Universal Life insurance contracts listed on the attached page.

1.  The undersigned agree that transactions or transfer allocations cannot be processed on the business day following a monthly anniversary which occurs on either a Saturday, Sunday or a holiday. (All applicable dates are listed at the end of this letter.)

2.  The undersigned agrees to make no transactions or transfer allocations for five (5) business days following the issue of a new policy.

3.  The undersigned agrees to confirm the accuracy of transactions or transfer allocations the next business day following such transactions or transfer allocations. In the event that an error is discovered from the previous day's transactions or transfer allocations, the undersigned agrees to make no transactions or transfer allocations for the day on which the error was discovered in order to allow corrections to be made.

4.  In the event of an error in a previously processed transaction or transfer allocation not identified the following business day as in 3 above, the undersigned agrees to make no transactions or transfer allocations for the number of days since the error occurred where transactions or transfer allocations were processed, including the day of the error. In addition, one business day will be added before a transaction or transfer allocation can be made in order to insure corrections are processed correctly.

*Example: An error occurs from a Monday transaction - a transaction is processed on Tuesday - the error is not discovered until Wednesday.*
*Transactions or transfer allocations will be suspended on Thursday and Friday (" . . . the number of days since the error occurred where transactions or transfer allocations were processed," and Monday (" . . . In addition one business day will be added . . . " The next transaction or transfer allocation will be made on*

*the following Tuesday.*

Please acknowledge your agreement with the items stipulated above by signing as indicated on the attached page.

The Second "written modification agreement", dated July 2, 1999, is substantially the same as the above, and provides:

Allmerica requests your signatures and those of your Allmerica Financial representatives acknowledging your understanding of the provisions regarding the allocation of funds within the Variable Universal Life insurance contracts listed on the attached page.

1.   The undersigned agree that transactions or transfer allocations cannot be processed on the business day following a monthly anniversary which occurs on either a Saturday, Sunday or a holiday. (All applicable dates are listed at the end of this letter.)

2.   The undersigned agrees to make no transactions or transfer allocations for five (5) business days following the issue of a new policy.

3.   The undersigned agrees to confirm the accuracy of transactions or transfer allocations the next business day following such transactions or transfer allocations. In the event that an error is discovered from the previous day's transactions or transfer allocations, the undersigned agrees to make no transactions or transfer allocations. (Refer to specific correction process as detailed in item 4 below).

4.   In the event of an error in a previously processed transaction or transfer allocation not identified the following business day as in #3 above, the undersigned agrees to make no transactions or transfer allocations during the correction process. The corrections process is contingent upon the number of financial transactions that have been processed, including monthly insurance cost deductions. All financial transactions are processed in chronological order. Corrections normally take 2 days for each transaction: one day to reverse and another day to reprocess. This may not include any MAV (insurance cost deduction) processing that needs to be done at the end of the correction and may result in an additional day of processing. In addition, one business day will be added before a transaction or transfer allocation can be made in order to insure corrections are processed correctly.

*Example: An error occurs from a Monday transaction - a transaction is processed on Tuesday - the error is not discovered until Wednesday.*
*Transactions or transfer allocations will be suspended on Wednesday. The correction process is as follows:*
*Wednesday: Reverse the Tuesday transaction*
*Thursday: Reverse the Monday transaction*

> *Friday: Reprocess the Monday transaction*
> *Monday: Reprocess the Tuesday transaction*
> *Tuesday: This is the extra day to make certain the correction processed properly*
> *Wednesday: Trading may resume*
>
> *If there is an MAC that should have been processed throughout the correction process, this could add another day, resulting in trading suspension until Thursday.*

In addition, it is agreed that increases to face amounts of the policy contracts affected, will be allowed by Allmerica, so that the adjustment/loss suffered due to the unit pricing error on April 6, 1999 can be added back into the policy contracts in full.

Please acknowledge your agreement with the items stipulated above by signing as indicated on the attached page.

Plaintiffs argue that the above letters represent all the limitations defendants placed on their trading activities.  Defendants argue that the above letters were intended to address clerical errors arising as a result of plaintiffs' trading activities.  While it is obvious that the above letters were intended to address clerical errors, they also refer to other matters, such as when plaintiffs cannot make transactions or transfers.  They letters do not indicate what affect they have on the allocation of funds provisions in the policies, whether, for example the letters represent restrictions on plaintiffs' trading activities in addition to those already contained in the policies, or whether the letters constitute the parties' understanding and agreement as to the only restrictions on plaintiffs' right to make transfers.  "Where the intent of the parties is too ambiguous to be gleaned from the contract alone, the Court should receive evidence that might better clarify that intent." *DKR Capital, Inc. v. AIG Intern. W. Broadway Fund, Ltd.*, No. 03 Civ. 1568(JGK), 2003 WL 22283836, at *4 (S.D.N.Y. Oct. 2, 2003) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 897 (2d Cir. 1976)).  Because plaintiffs have produced writings endorsed by defendants which alter the allocation of funds provisions in several of the policies,

the Court cannot say, at this stage of the litigation, that the proposed second amended complaint fails to state a claim on which relief can be granted.  Accordingly, plaintiffs' motion to file a second amended complaint is granted.

Defendants advance several other arguments, all of which lack merit.  Defendants claim that the alleged modification/waiver would violate public policy which disdains "market timing".  Defendants support their motion, however, in part, with evidence not referred to in the pleadings.  As this is not a motion for summary judgment, the Court declines to consider such documents at this time.  Defendants further argue that any waiver is executory, and that Allmerica has rescinded any such waiver.  The New York Court of Appeals has held, "[a] waiver, to the extent that it has been executed, cannot be expunged or recalled, but, not being a binding agreement, can, to the extent that it is executory, be withdrawn, *provided the party whose performance has been waived is given notice of the withdrawal and a reasonable time after notice within which to perform*."  *Nassau Trust Co. v. Montrose Concrete Products Corp*., 56 N.Y.2d 175, 184 (1982) (emphasis added) (internal citations omitted).  Even assuming the truth of defendants' assertions, whether plaintiffs were given reasonable notice cannot be resolved through a motion to dismiss.  The Court cannot say, at this point, that the proposed second amended complaint is futile, or that plaintiffs can prove no set of facts in support of their claims.  Finally, since plaintiffs have adequately alleged breach of a modified contract and waiver and seek to compel defendants to comply with the terms of the policies as modified, plaintiffs' request to add a claim for specific performance is granted.  Accordingly, plaintiffs' motion to amend the amended complaint is granted.

V.      **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss the amended complaint is **granted**; and it is further

**ORDERED** that plaintiffs' motion to amend the complaint is **granted**; and it is further

**ORDERED** that plaintiffs file and serve the proposed second amended complaint **on or before April 11, 2006.**

**IT IS SO ORDERED.**

Dated: March 24, 2006
      Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

17